WORD v. HOUSTON OIL CO. OF TEXAS et al.†

(Court of Civil Appeals of Texas. Galveston. Jan. 12, 1912. Rehearing Denied Feb. 8, 1912.)

1. TRESPASS TO TRY TITLE (§ 41*)—COMMON SOURCE—EVIDENCE—ESTOPPEL.

Sayles' Ann. Civ. St. 1897, art. 5266, providing that in trespass to try title it shall not be necessary for the plaintiff to deraign title beyond a common source, and prescribing how plaintiff may show that the defendant is claiming under a common source, establishes a rule of evidence and of burden of proof, and not one of pleading or estoppel, and proof by plaintiff that defendant has a deed or chain of title from the person under whom plaintiff claims establishes prima facie that defendant is claiming under a common source; but the defendant is not precluded from showing that he holds a superior title to that held by the prima facie common source, or that there is an outstanding superior title.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 41.*]

2. TRESPASS TO TRY TITLE (§ 16*)—COMMON SOURCE—ESTOPPEL TO ATTACK.

Defendant in trespass to try title may show a superior title to that held by the common source, and to do so may attack the validity of a deed under which the common source claims.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent.Dig. §§ 20, 23; Dec.Dig. § 16.*]

3. TRESPASS TO TRY TITLE (§ 41*)—COMMON SOURCE—REBUTTAL OF PRESUMPTION.

Though mere proof that some other person than the common source at one time held the title attempted to be conveyed by the common grantor, or of the invalidity of a deed under which the common source claims, will not overcome the prima facie presumption, arising from the defendant's claim under a common grantor with plaintiff, that at the time such grantor conveyed he had acquired the title of all previous owners, if proof of the invalidity of the deed under which the common source claimed is supplemented by proof that the title in fact never passed to the common source, but is held by the defendant, or is outstanding in some third party, plaintiff cannot recover upon the title held by him under the common source.

[Ed. Note.—For other cases, see Trespass to Try Title, Dec. Dig. § 41.*]

4. VENDOR AND PURCHASER (§ 189*)—ESTOPPEL OF PURCHASER—TITLE OF VENDOR.

The widow of an owner of land is not, by taking a conveyance from a purchaser at an execution sale of the land, estopped to assert

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes.

† Writ of error denied by Supreme Court April 3, 1912.

that the deed from her late husband to the execution debtor was a forgery.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 189.*]

5. DEEDS (§ 207*)—INVALIDITY—EVIDENCE.

Evidence *held* sufficient to support a finding that a deed, executed in 1838, was a forgery.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 207.*]

6. DEEDS (§ 193*)—INVALIDITY—BURDEN OF PROOF.

The burden of proving that a deed, executed in 1838, followed by long assertion of title by the grantee therein and his successors in interest, was a forgery was on the person asserting such forgery.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 562–573; Dec. Dig. § 193.*]

7. EVIDENCE (§ 106*)—ADMISSIBILITY—CHARACTER.

In trespass to try title, evidence having been offered tending to show that a deed in plaintiff's chain of title was a forgery, and also evidence that the grantor in such deed, shortly after its date, executed another deed to his son, reciting a consideration so excessive as to indicate that the deed was simulated, evidence of the character of such grantor and his son for honesty was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 177–187; Dec. Dig. § 106.*]

8. DEEDS (§ 199*)—EVIDENCE—EXECUTION—ADMISSIBILITY.

In trespass to try title, in which it was claimed that a deed in plaintiff's claim of title was a forgery, a pay roll of a government vessel, in which the name of the grantor appeared, the date of the pay roll corresponding to the date of the deed, was admissible as tending to show that the grantor was not present at the place where the deed purported to have been executed.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 595–600; Dec. Dig. § 199.*]

9. EVIDENCE (§ 157*)—BEST AND SECONDARY.

In trespass to try title, in which it was claimed that a deed in plaintiff's claim of title was a forgery, a pay roll of a government vessel, covering the date of the purported deed, and containing the name of the grantor therein, was admissible as tending to show that the grantor was not present at the place where the deed purported to have been executed, as against the objection that the logbook of the vessel was the best evidence as to whether the grantor was with the vessel at such time.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 157.*]

Appeal from District Court, Tyler County; W. B. Powell, Judge.

Action by T. S. Word against the Houston Oil Company of Texas and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Joe W. Thomas, E. E. Easterling, Presley K. Ewing, and A. D. Lipscomb, for appellant. Greer & Minor, Wear, Orgain & Butler, and H. O. Head, for appellees.

PLEASANTS, C. J. This is an action of trespass to try title, brought by the appellant against the appellee Houston Oil Company, to recover title and possession of a league of land in Tyler county, granted by the state of Coahuila and Texas to Norman Hurd. The appellee Maryland Trust Company, which holds a mortgage upon the land, was made a party defendant. Robert W. Shaw and wife, Ella E. Shaw, were impleaded as warrantors by the defendant Houston Oil Company.

In its answer, the defendant Houston Oil Company specially pleads title under Norman Hurd through a deed from said original grantee to James G. Hurd, dated February 10, 1840, reciting a cash consideration of $10,000, which deed was acknowledged before R. D. Johnson, notary public in and for Galveston county, Tex., on September 10, 1845. Further allegations took the title under this deed by mesne conveyances down to and into defendant Houston Oil Company of Texas. Defendant further alleged that there appeared of record in volume A, p. 17, in the Deed Records of the so-called "County of Menard," to be found in the office of the county clerk of Tyler county, a purported conveyance by a general warranty deed from Norman Hurd to Samuel Moore, said instrument purporting to have been dated January 20, 1838, and to have been filed March 23, 1841, which instrument purported to have been acknowledged by Norman Hurd before G. V. Lusk, C. J., and ex officio notary public in and for Shelby county, Tex., on January 25, 1838. Defendant specially alleged that the instrument so appearing on record was a forgery, and that said purported conveyance from Hurd to Moore was never in fact executed by Norman Hurd on its purported date, or at any other time. Defendant then averred in the alternative that, if it should be found that the deed from Hurd to Moore was in fact executed, said defendant held the Moore title by regular chain of conveyances from Moore; each of said conveyances in said chain being set out in the answer. This answer also contains pleas of limitation of three, five, and ten years. The warrantors adopted the pleadings of said defendant. The Maryland Trust Company answered by general denial and plea of not guilty. The defendant Houston Oil Company and the interveners filed affidavits attacking the deed from Norman Hurd to Samuel Moore as a forgery.

The plaintiff, by supplemental petition, alleged that if there was a deed from Norman Hurd to James G. Hurd, as claimed in defendant's answer, that said deed was taken by James G. Hurd with notice of the pre-existing deed from Norman Hurd to Samuel Moore, and that said James G. Hurd paid nothing for said land, and the deed to him was without consideration. Plaintiff further alleged that the execution sale through which defendant in its answer claimed title under Samuel Moore was void, because the

writ under which the sale was made had expired prior to said sale.

The cause was tried by the court without a jury, and judgment was rendered in favor of defendants.

The league of land in controversy was granted by the state of Coahuila and Texas to Norman Hurd on June 23, 1835. By deed of date February 10, 1840, Norman Hurd, for a recited consideration of $10,000, conveyed the league to his son, James G. Hurd. This deed was acknowledged on September 15, 1845, and recorded in Liberty county July 12, 1850. On February 24, 1887, Mrs. Julia A. Hurd, the widow, and Mrs. Ella E. Shaw, the only child of the said James G. Hurd, joined by her husband, Robert W. Shaw, conveyed the land to the Neches River Stock Company. This conveyance was filed for record in Tyler county April 20, 1887. The defendant oil company, through mesne conveyance, holds the title acquired by the Neches River Stock Company by said conveyance.

In the deed records of the old county of Menard, there is the record of a deed of date January 20, 1838, from Norman Hurd to Samuel Moore, conveying the league of land in controversy. This deed, as it appears of record, was acknowledged before G. V. Lusk, chief justice of Shelby county, at Shelbyville, Tex., on January 25, 1838, and was recorded in said Menard county records on March 23, 1841. A certified copy of this record of said deed was recorded in the deed records of Tyler county November 13, 1849.

Samuel Moore, by R. L. Stephens, his attorney in fact, conveyed the land to Mary E. Brown on August 10, 1849. This deed was filed for record October 7, 1854. On January 29, 1855, Mary E. Brown, who was then Mary E. Frazier, joined by her husband, W. B. Frazier, conveyed to T. J. Word. On December 8, 1858, Word conveyed to George F. Moore. This title then passed through several parties, and on July 5, 1866, was reacquired by T. J. Word by a conveyance of said date from Susan Moore and husband, by their attorney in fact, Reuben A. Reeves. Appellant is one of the heirs of said T. J. Word, and has acquired by purchase the interest of the other heirs in the land in controversy.

The land was rendered for taxes, and the taxes thereon paid by T. J. Word and those holding under him from 1855 to 1875. Word, who, as before shown, in 1866 re-acquired the title originally obtained by him from the grantee of Samuel Moore, lost his mind in 1875, and thereafter no taxes were paid by him on the land. In 1877 the land was sold as the property of T. J. Word, under an execution issued on a judgment against him in favor of P. J. Willis & Bro. Willis & Bro. purchased at this sale, and the land was conveyed to them by the sheriff by deed of date February 6, 1877. The writ under which this levy and sale was made had expired before the day of the sale. Willis & Bro., on January 14, 1887, conveyed the land to Mrs. Julia A. Hurd. James G. Hurd and those holding under him have paid taxes on the land since 1842, except for the years 1845, 1867, 1869, 1872, 1875, 1877, 1880, and 1881.

Upon the issue of limitation, the trial court made the following findings of fact, which are supported by the evidence: "That on July 3, 1901, the Texas & Louisiana Land & Lumber Company and John H. Kirby conveyed the Norman Hurd and Theophilus Cushing leagues to Houston Oil Company of Texas. That said leagues are contiguous; the Cushing league being immediately south of the Hurd. That on July 1, 1898, the Texas & Louisiana Land & Lumber Company (who then held the James G. Hurd title) leased the said two leagues, by written lease, for ten years to Timothy Hennessey for the annual sum of $125, and that said Hennessey lived upon and occupied the Cushing for about seven years. That the Cushing league has a house and a field on it that was cultivated for nearly seven years. There are no improvements of any kind on the Norman Hurd league; neither is there any part of it under fence. Timothy Hennessey is a stockman, and used the land for pasturage. That John Swearingen paid him one year for letting his stock run on the cane on the Hurd league. That at no time did the said Hennessey have the exclusive use of the Hurd league. The same was open common all the time for the use of such stock as desired to graze or use the same."

There is no other evidence of possession of the land by either party.

Upon the issue of the forgery of the deed from Norman Hurd to Samuel Moore, the evidence shows that from December 28, 1837, to August 1, 1838, Norman Hurd was purser of the brig Potomac, which was one of the vessels belonging to the Texas navy. During the month of January, 1838, this boat was at Galveston, Tex. The original pay roll of the brig Potomac, now in the possession of the State Librarian, shows the account of each of the 54 officers and men on said boat. The entries as to Norman Hurd, the purser, are as follows: "Date of entry, December 28, 1837. Wages per month, $125.00. Date of discharge, Aug. 1, 1838. Whole term of service, seven months, four days. Whole amount of wages, $891.44. Wages due, $891.44."

Among the old papers which have been preserved by the Hurd family are the following receipt and order:

"Received of Mr. Norman Hurd $140.00 to be forwarded to his wife at Middle Hadden, Connecticut, the dangers of the seas only excepted. $140.00. Galveston, Jany. 23, 1838. L. M. Hitchcock."

"Brig Potomac, January 27, 1838—Sir:

You will please repair .to Houston and use your endeavors to obtain the articles mentioned in the requisition. Respectfully your obedient servant, George Wheelwright, Comdg. To Purser Hurd, T. Navy."

The distance from Galveston to Shelbyville is about 200 miles, and by the usual mode of travel in 1838 it would have required five days to go from one of these places to the other.

James Hurd, like his father, was also an officer of the Texas navy. The reputation of both father and son for integrity was of the highest. The relations existing between the two were intimate and confidential. The evidence shows that in 1839 James G. Hurd had a general power of attorney from his father to represent him in all of his business matters. For several years before his death, which occurred in 1870, Norman Hurd and James G. Hurd lived together in the same house. James G. Hurd continuously claimed to own the land in controversy after he purchased from his father, and at one time had an agent in Tyler county, who looked after the land for him.

The deed from Norman Hurd, found in the records before mentioned, does not recite the residence of either the grantor or grantee. Its caption is "Republic of Texas, County of Shelby," and it purports to have been witnessed by James Simons and N. Sanford. There is no testimony identifying these witnesses, or showing that any persons of their names lived in Shelby county, or in Texas, at the time this deed purports to have been executed.

The trial judge found from this evidence that the deed in question was a forgery. He further found that the value of a league of land, like the one in controversy, did not, in 1840 or 1845, exceed $1,000, and that the recited consideration of $10,000 in the deed from Norman Hurd to James G. Hurd was so much in excess of the value of the land and so improbable that he was forced to the conclusion that no consideration passed, and the deed was one of gift.

The conclusions of law filed by the court are as follows: "I conclude that the statutes of limitation do not apply in this case, as there was no exclusive occupancy or exclusive use of the Norman Hurd league, or any part thereof, at any time by the defendant or any one else. I conclude that the deed from Norman Hurd to J. G. Hurd did not become effective or binding on any one until it was registered in September, 1845. I conclude that the defendant was not estopped to deny the validity of the deed from Norman Hurd to Samuel Moore, and thereby prevented from showing it to be a forgery; it having pleaded its title under James G. Hurd to said land, and also alleged the forgery of said deed. I conclude the sheriff's deed, by virtue of judgment and execution against T. J. Word, to P. J. Willis & Bro.,

dated February 6, 1877, is void, and passed no title to said land to Willis & Bro. I conclude that no title passed to Samuel Moore by virtue of the deed from Norman Hurd to Samuel Moore, dated January 20, 1838, as the same was a forgery. I conclude the deed from Norman Hurd to James G. Hurd and the mesne conveyances from the heirs of James G. Hurd down to and in the defendant the Houston Oil Company of Texas put the title to the land in controversy in the defendant the Houston Oil Company of Texas, and I therefore find in its favor for the land sued for."

We shall not set out nor discuss the assignments of error in detail. The main objections presented to the judgment are: First. That, plaintiff having shown the defendants were claiming under T. J. Word, under whom plaintiff claims, they are precluded or estopped from attacking as a forgery the deed under which the common source obtained title. Second. That the evidence is insufficient to sustain the finding of the trial court that the deed from Norman Hurd to Samuel Moore was a forgery.

[1] We think neither of these objections to the judgment is valid. Article 5266 of Sayles' Civil Statutes, which provides that in suits of trespass to try title it shall not be necessary for the plaintiff to deraign title beyond a common source, and prescribes how a plaintiff may show that the defendant is claiming under a common source, establishes a rule of evidence and of burden of proof, and not one of pleading or estoppel. Under this article of the statute, if a plaintiff in an action of trespass to try title shows that the defendant has a deed or chain of title from the person under whom the plaintiff deraigns title, he prima facie establishes a common source, and is not required to show title back of such common source; and if the proof stops here the plaintiff is entitled to recover, if his title under the common source is superior to that shown in the defendant. But proof by plaintiff that defendant has a deed or chain of title from the person under whom plaintiff claims only establishes prima facie that defendant is claiming under a common source, and the defendant is not precluded from showing that he holds a superior title to that held by the prima facie common source, or that there is an outstanding superior title. Howard v. Masterson, 77 Tex. 41, 13 S. W. 635; Rice v. Railway Co., 87 Tex. 92, 26 S. W. 1047, 47 Am. St. Rep. 72; Ferguson v. Ricketts, 93 Tex. 565, 57 S. W. 19; Starr v. Kennedy, 5 Tex. Civ. App. 502, 27 S. W. 26; Story v. Birdwell, 45 S. W. 847; Caruthers v. Hadley, 134 S. W. 757.

In discussing this question, our Supreme Court, in the case of Howard v. Masterson, 77 Tex. 41, 13 S. W. 635, say: "No other facts appearing, it is to be presumed that the defendant claims no other title. The

effect of his claim is to assert that, prior to the conveyance through which he derives his right, the title was in the common source, and this is deemed sufficient to relieve the plaintiff from the necessity of proving that fact. The rule is just, useful, and convenient. But it is not broadly true to say, as is sometimes said, that when two persons trace title to same grantor each is estopped as against the other. Bige. on Estop. (4th Ed.) 335. The author just quoted also says: 'The question is one of the burden of proof only.' Id. 336, note 1."

In Rice v. St. Louis, A. & T. R. R. Co., 87 Tex. 90, 26 S. W. 1047, 47 Am. St. Rep. 72, Judge Gaines, in delivering the opinion of the court, said: "The rule as to the common source is that, when the plaintiff has proved that he and the defendant claim title to land from a common source, and that of the two titles emanating from that source his is superior, he shows a prima facie right to recover; and it may be conceded that it is a rule of evidence, and not of estoppel. Howard v. Masterson, 77 Tex. 41 [13 S. W. 635]. Notwithstanding the proof of the sufficiency of his title under the common source, the defendant may still defeat the action by showing that there is a title superior to that of the person or persons under whom both claim, and that he is the holder of that title; and, even without showing that he holds such superior title, it may be that his defense ought to prevail, provided he prove affirmatively, not merely that some one had the title anterior to that of the common source, but also that such previous title never vested in the common source."

In Story v. Birdwell, supra, the court say: "Where the evidence, by whomsoever introduced, shows that the defendant claims under two or more titles, any of which do not spring from the same source as plaintiffs' title, it then devolves upon the plaintiffs to connect themselves with the state, or otherwise to show a superior title to that of defendant from whatever source derived. Hendricks v. Huffmeyer, 90 Tex. 577 [40 S. W. 1]; Starr v. Kennedy [5 Tex. Civ. App. 502] 27 S. W. 26; Howard v. Masterson, 77 Tex. 41 [13 S. W. 635]."

In Starr v. Kennedy, supra, it is said: "The rule of common source is useful and convenient, when applied in a proper case, and is not to be lightly disregarded. It does not, however, possess the dignity of an estoppel, and preclude the parties from asserting any other title. On the contrary, either of the parties has the right to assert as many different, and even conflicting, titles as he may be able to produce."

[2] The contention of appellant that a defendant will not be permitted to show a superior title to that held by the common source if, in order to make such showing, he must attack the validity of a deed under which the common source claims, is not sound, and is not supported by the authorities cited and relied on by appellant.

The expression in the opinion in the case of Evans v. Foster, 79 Tex. 50, 15 S. W. 170, that the defendant could not question the validity of an administrator's deed under which the common source held, or any other link in the chain of title between the common source and the sovereignty of the soil, must be construed with reference to the facts of the case under consideration. In that case there was no attempt on the part of the defendant to show any title in himself, other than that held by him under the common source, and he could not show an outstanding title by merely showing that the administrator's deed was unauthorized; but to establish such outstanding title he was required to show at least prima facie that the superior title was never vested in the common source. This was not done by showing that the administrator's deed was not authorized, because, notwithstanding the invalidity of this deed, the presumption would exist that Brinson, who was the common source of title of the plaintiff and defendant, had in some way acquired the title to the land; there being no evidence that the title was in any other person.

[3] In Rice v. Railway Co., 87 Tex. 94, 26 S. W. 1047, 47 Am. St. Rep. 72, it is held that mere proof that some other person than the common source at one time held the title attempted to be conveyed by the common grantor is not sufficient to show an outstanding title; and we think it clear that mere proof of the invalidity of a deed under which the common source claims is not sufficient for such purpose. Proof of either or both of these facts cannot overcome the prima facie presumption arising from the defendant's claim under a common grantor with plaintiff that at the time such grantor conveyed he had acquired the title of all previous owners. If, however, proof of the invalidity of the deed under which the common source claimed is supplemented by proof that the title in fact never passed to the common source, but is held by the defendant, or is outstanding in some third party, the plaintiff cannot recover upon the title held by him under the common source. Ferguson v. Ricketts, 93 Tex. 565, 57 S. W. 19.

[4] We cannot bring ourselves to believe that the purchase by Mrs. Julia Hurd of the void title acquired by Willis & Bro. at the execution sale was such an admission or ratification of the forged deed from Norman Hurd to Samuel Moore as would estop her and those claiming under her from denying the validity of said deed. This is one of the contentions of appellant which is urged with much insistence. The proposition advanced is that, "where the purported maker of a deed or his successor in estate subsequently acquire and assert a new chain of title under

such deed, those so affirming its validity are precluded from attacking it as a forgery in a suit brought by those having superior right under such deed." It seems to us that it would be unreasonable to hold that because Mrs. Hurd, who held under James G. Hurd a life estate in one-third of the land, saw fit to "buy her peace" by purchasing the claim of Willis & Bro., that she and the defendants, who subsequently acquired her interest in the land along with the title of James G. Hurd, have lost that title by estoppel. We know of no authority for such refinement of the doctrine of estoppel, and appellant has cited us to none.

[5] We think the evidence before set out is sufficient to sustain the finding of the trial court that the deed from Norman Hurd to Samuel Moore was a forgery.

[6] It may be conceded that the age of the record of this deed, the original record having been introduced in evidence, as well as a certified copy of the copy of the original record recorded in Tyler county, taken in connection with the long assertion of claim under said deed, and the presumption which must always be indulged in favor of innocence of crime, was sufficient to meet and overcome the burden of proving the genuineness of the deed cast upon plaintiff by the affidavits of forgery filed by the defendants, and that it devolved upon defendants to meet this prima facie proof of the validity of the deed. Defendants sought to do this by showing that the grantor, Norman Hurd, was not present at the time and place the deed appears to have been executed. If the evidence adduced by the defendants is sufficient to sustain the finding that Norman Hurd was not in Shelbyville on January 20, 1838, or January 25, 1838, the respective dates of the deed and its acknowledgment, the finding of the court that the deed was a forgery is sustained.

As before stated, the distance from Galveston to Shelbyville is about 200 miles. There were no roads in this section of the state at that early date, and no means of travel across the country, except on foot or horseback, and the ordinary length of a day's journey at that time was 25 or 30 miles. Approximately one-third of this distance could be made by water transportation. The boats then in use for transportation traveled slowly, and it does not appear that there were any boats making regular trips from Galveston to any point in less than 150 miles of Shelbyville. We think this testimony sustains the finding of the trial court that at the date of this deed the time required to go from Galveston to Shelbyville was not less than five days. If this is true, it follows that if Norman Hurd was at Galveston with the brig Potomac, of which vessel he was an officer, on the 23d day of January, 1838, or the 27th day of said month, the court was authorized to conclude that he was not present at the time and place the deed purports to have been executed. The receipt from L. M. Hitchcock to Norman Hurd for $140, dated at Galveston January 23, 1838, tends to show that Hurd was in Galveston on that date. Hitchcock was a merchant, and the money was received by him to be sent to Hurd's wife, who lived in Connecticut. It is true that the money may have been given to Hitchcock for Hurd by some other person, with directions as to its remittance, though the receipt states that the money was received "of Hurd," not for him, and no mention is made of any other person in connection with the transaction, other than Hurd and his wife, to whom the money was to be forwarded; but the most natural and reasonable inference is that Hurd himself delivered the money and gave the direction as to its remittance, and prima facie this transaction occurred on the date of the execution of the receipt. The written order, directed to Hurd by his superior officer and dated on brig Potomac, January 27, 1838, may not have been delivered to him on that day, or may have been forwarded to him at some other place; but there is nothing upon the face of the paper to indicate this. The rules of official business of this kind required that the order should be in writing, and if the order in question was handed to Hurd, or sent him on board the vessel by his commander, it would have been in the form it bears, and we think a court or jury, called upon to pass upon the question could reasonably conclude that it was given or sent to him on board the vessel. In addition to this, the pay roll of the vessel shows that Hurd received pay for every day during the month of January, 1838, and if he had been absent from his post of duty for the length of time that it would have required to go to Shelbyville and return it is not probable that he would have been allowed or claimed pay for that time. It requires no more evidence to raise the issue of an alibi, when such alibi is sought to be established for the purpose of showing the forgery of the deed, than when it is sought to be established for any other purpose.

[7] The question to be determined in this case is whether the evidence is sufficient to sustain the finding that Norman Hurd was in Galveston on the date the deed in question purports to have been executed in Shelbyville, and the presumptions which obtain as to the genuineness of the deed have no weight in determining this question. In addition to this evidence of an alibi, we think the high character for integrity possessed by both Norman Hurd and his son, James G. Hurd, is a circumstance that should properly be considered upon the issue of forgery. It is entirely inconsistent with the reputation of either of these men to believe that Norman Hurd, after selling the land to Samuel Moore, should attempt to defeat Moore's

title and defraud him of the land by selling it to his son, and that the latter should have joined with and assisted his father in the attempted perpetration of a fraud of this kind. The trial court found that the deed to James G. Hurd was one of gift, and that no consideration was paid by him to his father. While we do not think that there is any evidence to sustain this finding, if it be true that the deed to Samuel Moore was a forgery, the evidence authorizes the finding that if the Moore deed was not a forgery that James G. Hurd knew of its execution, and in such event it would be reasonable to conclude that the recited consideration in the deed to him was wholly fictitious and the transaction was simulated, for the purpose of defrauding Moore. This being one of the inferences which might be drawn from the evidence, proof of the character of Norman and James G. Hurd was admissible for the purpose of rebutting such presumption.

[8, 9] There is no merit in the objection urged by appellant to the introduction in evidence of the pay roll of the brig Potomac. This was an official document, and came from the proper custody, and was, we think, material as tending to show that Hurd was in Galveston on the date in question. The objection that the pay roll was not admissible, because the logbook of the vessel was the best evidence as to whether Hurd was with his vessel at said time, and its nonproduction was not accounted for, is not tenable. Both of these records were primary evidence, and, besides this, we think the failure to produce the logbook was properly accounted for.

This disposes of the material questions presented in appellant's brief. None of the assignments of error show any error which would authorize a reversal of the judgment, and, without discussing them in detail, all are overruled, and the judgment of the court below affirmed.

Affirmed.