### WHITAKER et al. v. SURTEES et al.
### (No. 6879.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 14, 1923.)

**1. Life estates, ⊗⇒12—Life tenant cannot take minerals out of remaindermen's land to their injury.**

A life tenant cannot bore for and take minerals out of the remaindermen's lands, to the injury of the remaindermen.

**2. Life estates ⊗⇒12—Lessees, in oil and gas lease with holder of life estate of lands, held to acquire no rights thereunder as against remaindermen.**

The lessees in an oil and gas lease, executed by the holder of a life estate in the lands, acquire no rights whatever under such lease to mine and operate for oil and gas only on the land of the remaindermen, never before devoted to producing oil.

Appeal from District Court, Bexar County, Seventy-Third District; Robt. W. B. Terrell, Judge.

Suit by Harold Surtees and others against G. W. Whitaker and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Lewright & Lewright, Carl & Swearingen, and W. H. Kennon, all of San Antonio, for appellants.

Clamp, Searcy & Groesbeeck, of San Antonio, for appellees.

COBBS, J. This suit was instituted by Harold Surtees, Marshall Surtees, and A. W. Surtees, as guardian of the persons and estates of the minors, Mary L. Surtees, Anthony Surtees, Leonard Surtees, and Alfred Surtees, as plaintiffs, who allege substantially that they are the owners of the property described in plaintiffs' first amended petition, subject to a life estate held by A. W. Surtees, as the surviving husband of their mother; that A. W. Surtees and his second wife, Dora Surtees, executed an oil and gas lease on said property to W. W. and G. W. Whitaker, and —— McBeth, which oil lease is owned by the defendants, W. W., G. W., and E. E. Whitaker; that plaintiffs were not parties to said lease, and are the owners of the land covered by said lease, and were the owners of said land when the said lease was given, and said lease is recorded in the deed records of Bexar county, Tex., and constitutes a cloud on the title of plaintiffs; and they further allege that, since the filing of this suit, plaintiffs have executed an oil and gas lease on said property to A. W. Hobson, who has drilled an oil well on the said property producing oil in paying quantities; that defendants, G. W., W. W., and E. E. Whitaker, gave notice to the refinery not to take said oil, and asserted that they were the owners of the lease covering seven-eighths of said oil, to plaintiffs' great damage; and plaintiffs prayed for a cancellation of said oil and gas lease in its entirety, and for a permanent injunction restraining defendants from asserting any rights in said oil on said property.

Defendants, G. W., W. W., and E. E. Whitaker, filed a joint answer, consisting of a general demurrer, and a number of special exceptions, all of which were overruled, a general denial, and a cross action against plaintiffs and A. W. Hobson, in which they allege the purchase in good faith of a lease on said property in good standing and allege the payment of rental and acceptance by A. W. Surtees, and prayed judgment against said parties for their damages and for general and special relief. The court rendered judgment on a hearing canceling said lease in its entirety and removing the cloud from plaintiffs' title, and gave judgment to the defendants, G. W., W. W. and E. E. Whitaker, against A. W. Surtees, individually, for the amounts paid under said lease, and permanently enjoining said defendants from asserting any claim to the oil from said property, as prayed for by plaintiff.

The facts are conceded—at any rate, they are very well established—that appellees hold title as the remaindermen to the land in controversy, and that appellants hold title to the lease as the life tenants or under the life tenant. The court found as a fact that W. W. and G. W. Whitaker and G. V. McBeth, when they obtained the lease from

A. W. Surtees and his wife, Dora A Surtees, knew that the land was the separate property of the first wife of A. W. Surtees, Ethel Surtees, who was dead, and that the title to the land had passed under the statute to her children, who were the appellees, subject to a life estate in one-third use of the land by her surviving husband, A. W. Surtees. The lease to appellants cast a cloud upon appellees' title, authorizing a suit to remove same and to cancel the lease.

[1] Since the splendid and able opinion written by the late David Bryant of the then United States Circuit Court of Appeals in Higgins Oil & Fuel Co. v. Snow, 113 Fed. 433, 51 C. C. A. 267, the rule seems established firmly that a life tenant cannot bore for and take minerals out of the remaindermen's lands to the injury of the remaindermen, and is clearly announcing a doctrine that is universally followed in this state and other tribunals. In the case of Lone Acre Oil Co. v. Swayne, 78 S. W. 383, the Court of Civil Appeals for the First District, sitting at Galveston, followed that case with approval. It was carried to the Supreme Court on a writ of error and affirmed, opinion by the late Chief Justice Gaines. Swayne v. Lone Acre Oil Co., 98 Tex. 605, 86 S. W. 740, 69 L. R. A. 986, 8 Ann. Cas. 1117.

In discussing the statute of this state in regard to the rule of descent and distribution, providing, "The surviving husband or wife shall also be entitled to an estate for life, in one third of the land of the intestate, with remainder to the child or children of the intestate and their descendants" (Vernon's Sayles' Ann. Civ. St. 1914, art. 2462), Judge Gaines propounded the question:

"What, under this provision, are the rights of the life tenant in the oil underlying the land, when no attempt had been made to extract it at the time of the descent cast?"

Judge Gaines then proceeds to answer the question, after discussing the common-law doctrine and dower estates, dividing the estates into two classes of life estates: "First, conventional life estates, or those which are created by contract; and, second, those which came into existence by operation of law"—proceeds to say:

"We conclude, therefore, that it was the intention of the Legislature in enacting the statute in question to make the estate therein provided for subject to impeachment for waste. It is too well settled to require a citation of authority that, while it is not waste for a tenant by the curtesy or a tenant in dower to work an open mine, it is waste to open a new mine. In other words, the tenant of a life estate, punishable for waste, has no right to remove the minerals, when the land had not been devoted to mining purposes before the creation of his estate. Oil before its extraction is a mineral, and is a part of the land, and, in so far as the question under discussion is concerned, is to be considered like iron, coal, lead, or other solid mineral substances."

See the rule laid down in the law of Oil and Gas (3d Ed.), volume 1, by Thornton, §§ 298, 299:

"The rule concerning the right of a life tenant to open new mines or work old ones applies to oil or gas wells upon the life estate. Thus, where oil wells had been sunk, in the testator's life, under a lease, and one was being sunk when he died, it was held that the life tenant was entitled to the royalties under the lease. But if no well has been sunk in the landowner's lifetime, his life tenant cannot sink an oil well, nor lease the land; and if he does lease it, he cannot recover the rent under the lease. The life tenant cannot justify his conduct in boring oil or gas wells by claiming that if he did not take out the oil or gas, the neighboring landowners will drain the land; for the oil or gas belongs to the remainderman. Where the owner of land, after leasing it for mining of oil and gas, conveyed it to his children, reserving to himself a life estate in it, it was held that he was entitled to the royalties under the lease. And where a lessee in an oil lease from a life tenant continues to take oil after the death of the life tenant, he is liable to the remainderman.

"A life tenant may not open new mines upon the life estate; for him to do so is waste, even though, as in case of oil, it be necessary to secure it, where adjoining landowners have opened wells on their own lands, and the effect is to draw the oil from the land in which the life estate exists. The fact that possibly, by operations upon neighboring lands, all the gas will be taken before the remainderman came into possession, cannot affect the right of the remainderman to prevent the taking by the lessee or grantee of the life tenant. That such lessee or grantee will not derive any benefit from a grant or lease which the life tenant had no right to make cannot be regarded as a hardship to any person.' If a stranger dig and carry away coal from land in possession of a life tenant, upon which no mine has been opened, the remainderman must bring the action to recover damages."

The same holding has been made in all the states, with practical unanimity. See two recent Kentucky cases: Crain v. West, 191 Ky. 1, 229 S. W. 51, and Meredith v. Meredith, 193 Ky. 192, 235 S. W. 757.

[2] Appellants acquired no rights whatever by virtue of the lease to mine and operate for oil and gas only on the land of the remainderman, and to lay pipe lines and build tanks, towers, stations, and structures on said land, to produce, save, and take care of said products on land never before devoted to producing oil. A. W. Surtees, as shown, could not himself open mines on this land to the detriment of the remaindermen, the appellees herein. And the existence of this lease was a menace, a cloud upon appellees' title. Minerals being real estate, a prima facie case for relief under the common source of title was shown. Word v. Houston Oil

Co. (Tex. Civ. App.) 144 S. W. 334. Besides, under all of the authorities, appellees would be entitled to equitable relief by injunction or otherwise to preserve their rights.

If such were not the law, the life tenant might be permitted to make such leases, and the operation of new mines would in the course of time enable the life tenant to take out all the gas and oil in the land, and thereby render it valueless, for that purpose. He is not himself allowed to so impeach the life estate; then it follows he is not empowered to pass that right to another.

We have examined all the assignments, and, finding them without merit, they are overruled, and the judgment of the trial court is affirmed.