**MCZ, INC., Appellant,**

v.

**Arthur E. SMITH, Jr., Julie Marie Beasley Armstrong, and Ernest Etheridge Beasley, Jr., Appellees.**

**No. 01–85–0190–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 27, 1986.

Rehearing Denied April 3, 1986.

Steve Underwood, Caldwell & Hurst, Houston, for appellant.

Don M. Kennedy, Mark D. Wilson, Ladin, Engel & Kennedy, Houston, for appellees.

Before DUGGAN, JACK SMITH and HOYT, JJ.

OPINION

DUGGAN, Justice.

This is an appeal from a declaratory judgment that: (1) adjudged and declared the validity of an oil, gas, and mineral lease; (2) established the amount due as production proceeds and prejudgment interest to the lessee from the operator of a producing well on the subject property; and (3) denied relief on the appellant's counterclaim.

Nick Philipello, Sr. and wife, Nora Philipello, owned as community property 107 acres of land ("the tract") in Brazos County at the time of Nick, Sr.'s death in December 1970. Nick, Sr.'s will, duly admitted to probate, devised a life estate in his community one-half of the tract to Nora, with the remainder one-half to his and Nora's son, Nick, Jr., and one-half to their grandchildren, Julie Beasley Armstrong and Ernest Beasley, share and share alike. At the time of Nick, Sr.'s death, there were no producing oil and gas wells on the tract, and no drilling operations had commenced.

Nora Philipello executed an oil, gas, and mineral lease ("the Philipello lease") on the tract to Amalgamated Bonanza Petroleum Ltd. ("Bonanza"), which lease was recorded September 23, 1976. Nick, Jr.'s signature also appears in the lease as a lessor, but the capacity in which he signed is disputed in a severed portion of this suit. Bonanza assigned the Philipello lease to Gulf Oil Corporation ("Gulf") and Prodeco Oil & Gas Co., Ltd. ("Prodeco"). Gulf and Prodeco thereafter assigned the lease by an unrecorded letter agreement dated June 2, 1981, to appellant, MCZ, Inc. ("MCZ"), to drill a well on the tract. A formal assignment by Gulf and Prodeco to MCZ reserved a 25% royalty interest, and was recorded on June 25, 1982. In turn, MCZ assigned 90% of its interest to Andrus Resources Corporation, Bill Andrus, Charles R. Robinson, Milton M. Cook, Milton M. Cook, Jr., Troy P. Wakefield, Jean B. Wakefield, and the Parten Wakefield 1978 Trust (collectively "MCZ's assignees").

On or about August 15, 1981, MCZ commenced to drill on the tract. A producing oil well was completed in December 1981, and has produced continuously to time of trial.

On or about September 1, 1981, before completion of the well, MCZ entered into a pooling agreement whereby 57.60 acres of the 107 acre tract was combined with two other owners' tracts to form the 160 acre "Philipello Unit." The Philipello tract therefore constituted 36% of the Philipello Unit's total acreage.

Appellees Beasley and Armstrong, the Philipello grandchildren, did not execute the Philipello lease or any other lease in favor of MCZ, and MCZ makes no claim that it has ever obtained their interest.

On August 19, 1982, appellees Beasley and Armstrong, together with Nora Philipello, each purportedly signing as "Lessor," executed an oil, gas, and mineral lease in favor of appellee, Arthur E. Smith, Jr., as lessee. An addendum to the printed lease form recited that the lease was retroactive to the date of first production from the well then producing on the property, that it was understood and agreed that Smith was leasing an "unleased undivided interest in the land described herein, and that the balance of the undivided interest is currently leased to another parties [sic] and there currently exists a producing oil and gas well on such property...."

Both before and after execution of the Smith lease, demands were exchanged between MCZ and the other parties for stipulations of royalty interest and proposals of division orders.

Nora, Nick, Jr., Beasley, Armstrong, and Smith initially filed a joint action against MCZ seeking royalties, accounting, waste, interest at 10%, and costs. MCZ answered and filed its cross-claim alleging usury against all plaintiffs because of their demands for 10% interest, and further alleging a tort claim against Smith for his malicious interference in MCZ's contractual relationship with Nora and Nick, Jr. The parties' pleadings disputed whether MCZ had repeatedly attempted to pay accrued

royalty interests, whether the plaintiffs had repeatedly refused bona fide tender offers, whether the plaintiffs asserted mutually conflicting royalty claims, and whether the 1982 Smith lease was valid.

MCZ's plea in abatement alleged that all of MCZ's working interest partners had "record undivided interests," and were "necessary and indispensable parties." These included Gulf and Prodeco, who retained a 25% royalty interest when they assigned the Philipello lease to MCZ, and MCZ's assignees, to whom it had assigned 90% of the Philipello lease.

Following a pre-trial hearing, the court denied MCZ's plea in abatement and granted a motion filed by Beasley, Armstrong, and Smith to sever their remaindermen-related action against MCZ from Nora's and Nick, Jr.'s contract-related action.

The trial court entered judgment adjudging and declaring: (1) that Smith held a valid oil, gas, and mineral lease dated August 19, 1982, from Beasley, Armstrong, and Nora, vesting title in Smith to 25% of the mineral interest in the tract; (2) that Smith was entitled to 25% of all oil, gas, or other minerals produced from the tract, less 25% of the reasonable costs of production and marketing, subject to payment of royalties as set forth in the 1982 lease; (3) that Smith recover from MCZ $663,304.26 for such production proceeds less costs through July 31, 1984; that Smith recover future production proceeds on the same basis; (4) that Smith recover $56,254.41 in prejudgment interest through July 31, 1984, interest at 6% per annum thereafter until date of judgment, and interest on the judgment at 10.32%; and (5) that MCZ take nothing by its counterclaim against Smith, Beasley, and Armstrong. MCZ asserts 41 points of error.

MCZ's first sixteen points of error allege errors both in the trial court's overruling of MCZ's plea in abatement and in its rendering judgment because of omission of necessary parties.

■ Tex.R.Civ.P. 39, the applicable joinder rule, states, in part:

(a) *Persons to be Joined if Feasible.* A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

The suit seeks and obtains declaratory judgment relief; therefore, the Uniform Declaratory Judgments Act, former Tex. Rev.Civ.Stat.Ann. art. 2524–1 (Vernon 1965), now Tex.Civ.Prac. & Rem.Code sec. 37.006(a) (Vernon Supp.1986), must also be considered. Section 11 of the Act in effect at time of trial states:

When declaratory relief is sought, *all persons shall be made parties who have or claim any interest which would be affected by the declaration,* and no declaration shall prejudice the rights of persons not parties to the proceedings. (Emphasis added.)

Although art. 2524–1 is mandatory, the trial court is vested with discretion in determining joinder of parties, and the court's findings will not be set aside except for an abuse of discretion. *Williamson v. Tucker,* 615 S.W.2d 881, 886–87 (Tex.Civ.App.—Dallas, 1981, writ ref'd n.r.e.).

MCZ argues that because it not only obtained the lease by assignment but also made assignments of its own to other working interest partners, it now retains only 10% of the interest claimed by the appellees; that complete relief cannot be granted without the presence of those "necessary and indispensable parties" who own the balance of the working interest;

and that it is placed in the position of incurring multiple and inconsistent obligations because of the substantial reduction by the court's judgment of the interest owned by the parties it sought to have joined.

We disagree. No interest conveyed by lease has been altered. Neither Armstrong and Bailey nor their assignee, Smith, was ever a party to the 1976 lease, or to the Philipello Unit formed under its provisions. All of the parties whom MCZ urges should be brought into the suit have their relationship to the tract solely through the 1976 Philipello lease, either as MCZ's assignors or its assignees.

■ The Armstrong-Bailey remainder interest was never a part of the estate conveyed by the lease. MCZ's relationship with and liability to Armstrong and Bailey arises from the law of cotenancy, not from a contractual relationship. A co-tenant, such as MCZ, who produces oil and gas from commonly owned property without first having secured the consent of its co-tenants, is liable to the non-producing co-tenants for minerals produced, less reasonable costs of production and marketing. *Cox v. Davison,* 397 S.W.2d 200, 201 (Tex. 1965). As the operator of the Philipello well, MCZ became the producing co-tenant to the Armstrong-Beasley remainder interest, and MCZ's production triggered its duty under Texas law to account to remainder interests for minerals produced, less proportionate reasonable costs. As operator, MCZ alone was responsible under the law of co-tenancy to account to its co-tenant remaindermen, just as it was responsible under the lease to account to its assignors and assignees.

■ Evidence admitted before the court included a division order title opinion prepared by MCZ's attorneys and furnished to the working interest owners. The opinion recognized and advised those interest holders of the unleased Armstrong-Beasley .25000 remainder interest, and correctly stated that mineral co-tenants and their lessees who participated in the drilling of a well would be entitled to recover from the non-consenting mineral cotenants' [i.e., Armstrong's and Beasley's] share of production

... an amount equal to the aggregate of such nonjoining mineral interest's share of all costs and expenses incurred in drilling, completing, equiping, producing and operating such well, before the nonjoining co-tenants are entitled to share in production.... Thereafter, the owners of the unleased mineral interests ... are entitled to receive their respective shares of well production less such interest's share of operative costs.

Such working interest owners were thus put on notice that they had no interest in the remaindermen's funds here in dispute, and MCZ could have no liability for such funds to anyone other than Armstrong, Beasley, and Smith, their lessee. Since MCZ, as operator of the well, sold oil and gas and retained the remaindermen's interest in excess of drilling and production costs, the joinder of the working interest owners was unnecessary for complete relief among the parties already present. MCZ's points of error 1–16 are overruled.

MCZ claims in its points of error 17–22 that Nora Philipello was an indispensable party and therefore should not have been severed.

It is undisputed that Nora executed both the 1976 Philipello lease and the 1982 Smith lease. All parties are in agreement that Nora's fee simple estate was bound by the 1976 lease to Bonanza, which ultimately came to MCZ by assignment. They disagree as to whether her life tenancy passed at that time. The appellees assert that Nora's life estate was not bound because the remaindermen did not execute the lease with her, citing *Whitaker v. Surtees,* 248 S.W. 432 (Tex.Civ.App.—San Antonio 1923, no writ).

■ MCZ urges that Nora's life tenancy interest passed with her execution of the 1976 lease, that her signature on the 1982 Smith lease was therefore a nullity, and that the Smith lease was thereby ineffective because she had nothing left to tender

as a lessor to Smith. This latter contention, by which MCZ attacks the validity of the Smith lease, would hardly be advanced by any party to the suit other than MCZ, whether Nora was retained in the suit or not; Nora's presence in the suit was not required in order for MCZ to assert the contention. Points of error 17–22 are overruled.

MCZ asserts by its points of error 23–28, 37, and 38 that the trial court's award of prejudgment interest was improper. It argues that the respective interests of the parties were "wholly undetermined prior to the time suit was filed"; that the issue was confounded as to "who, if anyone, was owed what sums"; that the sums payable were not ascertainable; and that MCZ's refusal to pay was neither wrongful nor inequitable.

■ *Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480, 485 (Tex. 1978), is authority that a court can award prejudgment interest upon equitable principles to compensate one for another's possession and use of his funds, and that necessity or reasonableness of the withholding does not foreclose the obligation to pay for the detention. If confusion existed as to the proper recipients, MCZ could have precluded any claim for interest by tendering the funds into the registry of the court or placing them in an interest-bearing escrow account. In any event, testimony of MCZ's attorney, David Hurst, showed that he advised his client orally on or about March 3, 1983, of the remaindermen's 25% remainder interest, and gave a written title opinion to the same effect. MCZ nevertheless continued the unlimited possession and use of its co-tenants' money. The withholding by MCZ was inequitable, and the charge of interest for MCZ's detention was not punitive. *See id.* at 487. MCZ's contention that the sums payable were not ascertainable is inconsistent with its agreement at trial to furnish information of amounts due. MCZ's points of error 23–28, 37, and 38 are overruled.

MCZ asserts by its points of error 29 and 30 that the trial court erred in rendering judgment contrary to the unrevoked division orders that each of the appellees executed, stipulating their respective interests in the Philipello Unit.

Shortly after Smith leased the Armstrong and Beasley remainder interest, his office prepared and mailed to MCZ division orders executed by Smith, Beasley, and Armstrong that reflected their participation in the Philipello Unit. MCZ takes the position that Smith's tender of the executed division order constituted a ratification of the Philipello Unit. Smith testified that the division orders were prepared under the mistaken belief that the well was not located on the Philipello tract, and that the remaindermen's interest was a unit interest and not a tract interest. Smith further testified that MCZ's President, Marvin Zeid, and its landman advised him immediately that MCZ refused to recognize the lease and did not accept the division orders. He testified that the erroneous orders were not thereafter revoked in writing because of these statements.

The trial court admitted the division order in evidence over the appellee's objection that MCZ had not pleaded that the appellees were bound by, or estopped to deny their interest in, the unit. However, the court refused MCZ's requested finding that the division orders were never revoked.

■ It is undisputed that MCZ never tendered payment pursuant to the division order. Division orders are binding agreements between the parties, but they do not "rewrite or supplant" a lease contract. *Exxon Corp. v. Middleton,* 613 S.W.2d 240, 250 (Tex.1981). They are binding

> only for the time and to the extent that they have been, or are being acted on and made the basis of settlements and payments and *from the time that notice is given that settlements will not be made on the basis provided in them, they cease to be binding.* (Emphasis added.)

*Id.* (citing *Phillips Petroleum Co. v. Williams,* 158 F.2d 723, 727 (5th Cir.1946)). The division orders in question were never

acted on. Since no payments were ever made by MCZ under the orders, the division orders were revoked when appellees' petition was served on MCZ asserting an interest different from that shown in the orders. *Exxon*, 613 S.W.2d at 250. The court did not err in rendering judgment contrary to the interest expressed in the division orders. MCZ's points of error 29 and 30 are overruled.

In its points of error 31 through 36, MCZ asserts that there is no evidence or insufficient evidence to support the trial court's findings of fact numbers 5, 8 and 11, which read as follows:

5. Nora Philipello executed a lease describing the tract in favor of Amalgamated Bonanza Petroleum, Ltd. on or about September 15, 1976, which is currently held and operated by Defendant, MCZ, Inc.

8. MCZ, Inc. has operated the oil and gas well on the tract at all times since completion, and has been the collecting agent for all proceeds from the sale of oil and gas from the well from completion until the present time.

11. Though MCZ, Inc. recognized that it did not hold title to Beasley/Armstrong mineral interest, MCZ, Inc. as operator collected and retained for its use and benefit, the sum of Six Hundred and Sixty-Three Thousand Three Hundred Four Dollars and Twenty-Six Cents ($663,304.26), the sum attributable to twenty-five percent (25%) of the proceeds from the sale of oil and gas produced from the land, less twenty-five percent (25%) of the costs of production and marketing from date of completion through July 31, 1984. It has also retained for its use and benefit, proceeds from sales of oil and gas, less costs, since that time, without payment to Smith, Beasley or Armstrong.

A court of appeals reviews the legal or factual sufficiency of the evidence supporting findings of fact by the same standard it applies when reviewing jury answers to special issues. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). When reviewing a no evidence point, the court considers that evidence, and reasonable inferences therefrom, that viewed in its most favorable light, supports the jury finding, and rejects all evidence or reasonable inferences to the contrary. *Tomlinson v. Jones*, 677 S.W.2d 490, 492 (Tex.1984). When the court finds more than a scintilla of evidence in support of the finding, a no evidence point of error must be overruled. On a factual insufficiency point, the court considers and weighs all the evidence, whether for or against the finding of fact, and sustains the point if the finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

As to Finding of Fact No. 5, MCZ concedes that it is undisputed that it operates the Philipello well. However, it argues that there is no evidence it *"holds"* the Philipello lease, and urges that this portion of the finding is material to the judgment because it "literally forms the basis of the theory that defendant [MCZ] is solely responsible" for the damages appellees seek. We disagree. MCZ's sole responsibility to account occurs because it is the appellees' producing co-tenant who has severed and extracted minerals from the co-owned tract, collected monies, and refused to pay over to co-owner appellees, as discussed in points of error 1–16. MCZ's liability has nothing to do with the percentage of the lease it "holds," but results from MCZ's having acquired money due appellees from operating the well. Nevertheless, MCZ's own Exhibit 17, the "Stipulation of Working Interest" executed by MCZ as an "Interest Owner," showed MCZ to own a 10% working interest as of July 26, 1983, and was consistent with MCZ's own requested Finding of Fact No. 2 that it owns a 10% working interest, which it urged in its point of error number 12.

As to Finding of Fact Nos. 8 and 11, MCZ urges that the record fails to show that it has been the "collecting agent for all proceeds from the sale of oil and gas from the well from completion to the

present time," or that it collected and retained the sums at issue for its use and benefit. MCZ urges that there is no presumption that it acted as "collecting agent," and that the mere fact the well produced a certain amount of money is not evidence that MCZ collected or retained it.

■ MCZ elicited testimony from its employee, Tony Davidson, that MCZ suspended funds attributable to appellees' interests based on the division order title opinion. MCZ's attorney, David Hurst, called as a witness by appellees, testified that MCZ had tendered funds into the registry of the court in connection with Nora's interest under a lease and Nick, Jr.'s alleged interest under the same lease. MCZ's attorney Steve Underwood stated within his affidavit that MCZ had informed Nora's and Nick, Jr.'s attorney that it was willing to pay the accrued royalties due to those parties. Letters attached to Underwood's affidavit repeatedly express MCZ's desire to pay Nora and Nick the accrued royalty it was holding. All of these items of testimony were evidence from which the trial court could reasonably conclude that MCZ had control of funds for disbursement, and was the collection agent for proceeds of oil and gas sales. MCZ's points of error 31–36 are overruled.

By its points of error 39–41, MCZ asserts that the trial court erred in entering judgment holding the 1982 Smith lease to be a valid oil, gas, and mineral lease. MCZ argues that as a matter of law Nora leased her life estate when she executed the 1976 Philipello lease, which was valid between herself as lessor and Bonanza as lessee, and she had no further interest to convey.

The judgment adjudged and declared that: (1) Smith held a valid oil, gas, and mineral lease from Armstrong, Beasley, and Nora that vested title in Smith in and to 25% of the tract's mineral interest, subject to the payment of royalties as set forth in the lease; (2) Smith was entitled to all revenues from 25% of all oil, gas, and minerals produced from the tract, less 25% of the reasonable costs of production and marketing, subject to the payment of royalties

as set forth in the lease from Armstrong, Beasley, and Nora; and (3) Smith should recover from MCZ the sum of $663,304.26 as the amount due from commencement of production through July 1, 1984, with future monthly payments on the same basis.

The trial court found by its Conclusion of Law No. 1 that:

> MCZ, Inc. is the holder of an oil, gas and mineral lease dated September 15, 1976, from Nora Philipello to Amalgamated Bonanza Petroleum, Ltd., vesting title in MCZ, Inc. in and to Nora's fifty percent (50%) fee simple mineral interest only in the ... tract, subject to the payment of royalties as set forth in said lease.

Additionally, the trial court refused MCZ's requested additional finding of fact that, prior to the 1982 lease, Nora had previously leased her life estate to Bonanza by the 1976 lease.

The trial court obviously concluded that Nora made no effective disposition of her life estate when she executed the 1976 lease, but leased only her community half interest in fee.

Both parties acknowledge the general proposition stated in Woodward, *The Open Mine Doctrine in Oil and Gas Cases*, 35 Tex.L.Rev. 538 (1957), that

> neither a life tenant nor a remainderman can alone execute a valid mineral lease without the joinder of the other ...

*Kemp v. Hughes*, 557 S.W.2d 139, 142 (Tex. Civ.App.—Eastland 1977, no writ). However, the proposition is not the equivalent of a holding that a lease by either the life tenant or the remainderman, without the joinder of the other, is a nullity.

> In effect, the execution of a lease of mineral conveyance by either the life tenant or the remainderman merely effects a transfer to the lessee or transferee of the veto power of the grantor on development by the other. A lessee of the life tenant alone may not develop the minerals, but he may prevent development by the owner of the future interest or by his lessee.

H. Williams & C. Meyers, *Oil & Gas Law* sec. 512.1 (1984). None of the authorities cited by appellees states that a lease by a life tenant alone is ineffective to bind whatever executory interest the life estate owner has or may thereafter obtain in the property.

 Nora's initial lease of her fee and life estate interest, not joined in by the remaindermen, was ineffective to authorize drilling in derogation of the remaindermen's rights, *Whitaker v. Surtees*, 248 S.W. 432; however, it was effective to convey to Nora's lessee the right to lease her life tenancy interest. Likewise, Armstrong and Beasley conveyed to Smith by the 1982 lease their rights to lease their remainder interests. The net result is that no valid mineral lease resulted from Nora's 1982 joinder with Armstrong and Beasley in the conveyance to Smith; Nora had previously conveyed her right to lease her life tenancy, and had nothing left to lease.

Accordingly, the trial court erred in adjudging and declaring in the judgment that the 1982 Smith lease executed by Nora, Beasley, and Armstrong was a valid oil, gas, and mineral lease (because Nora had no remaining right to convey her life tenancy), and in concluding in its Conclusion of Law No. 1 that the 1976 Philipello lease conveyed only Nora's 50% fee simple mineral interest (because she also transferred her right to lease her life estate interest).

However, the trial court's erroneous judgment declaration and conclusion of law can be disregarded as surplusage if the appellees are entitled to judgment on another pleaded and proven theory of recovery. *Gulftide Gas Corp. v. Cox*, 699 S.W.2d 239, 246 (Tex.App.—Houston [1st] 1985, writ ref'd n.r.e.). Such is the case here.

Armstrong, Beasley, and Smith pleaded in their Second Amended Original Petition that they were co-tenants of MCZ and, "[a]s such, they are entitled to twenty-five (25%) percent of all oil, gas or other minerals, less twenty-five (25%) percent of the costs of production and marketing."

We have held that neither the 1976 Philipello lease nor the 1982 Smith lease effectively joined the life tenancy and remainder interests. Waste of the remaindermen's interest resulted when MCZ extracted minerals under the 1976 lease, and the remaindermen (and Smith as their assignee) were entitled to recover. The measure of damages to the Armstrong and Beasley remainder interests was pleaded and was correctly adjudged, declared, and computed in the judgment, i.e., all revenues from 25% of all oil, gas, and minerals produced from the tract, less 25% of the reasonable costs of production and marketing. Smith, as assignee, is entitled to receive such sums, subject to his contractual payment of the agreed royalties to his lessors.

Having disregarded as surplusage the trial court's declaration of validity of the Smith lease as a valid oil, gas, and mineral lease, we overrule MCZ's points of error 39–41.

The judgment is affirmed.