NUMBER 13-01-503-CV
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI – EDINBURG

 

HOEFFNER, BILEK & EIDMAN, L. L. P.,                                     Appellant,

v.

JERRY GUERRA AND PATRICK BEAM,                                   Appellees.




On appeal from the 156th District Court
of San Patricio County, Texas.




 MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Rodriguez and Dorsey



Opinion by Chief Justice Valdez
         Attorneys Jerry Guerra and Patrick Beam intervened in the underlying mass toxic
tort lawsuit seeking attorney’s fees for their performance as local counsel for the law
firm of Hoeffner, Bilek & Eidman, L.L.P. (“HB&E”). Following a bench trial, the trial
court awarded attorney’s fees to Guerra and awarded none to Beam. All parties
appeal the trial court’s judgment. We modify the the judgment of the trial court in
part, and as modified, affirm. 
I.
Background
         As this is a memorandum opinion and the parties are familiar with the underlying
facts, we will only address them herein as necessary to advise the parties of our
decision and the basic reasons for our decision. See Tex. R. App. P. 47.4. 
         Guerra originally learned of the facts giving rise to the underlying mass toxic tort
case and associated HB&E into the case as lead counsel for plaintiffs. Guerra did not
consider himself a referring attorney, but performed work on the matter under an
agreement with HB&E for a five percent interest in the case as local counsel. As the
litigation proceeded, Guerra changed law firms and became associated with the law
firm of Burkett & Beam as a contract attorney. Guerra and Beam approached Thomas
Bilek and Todd Hoeffner, partners of HB&E, to discuss a new local counsel
arrangement. Although the testimony is in some dispute, it appears that Guerra and
Beam offered HB&E the services of all attorneys and staff at the firm in exchange for
new employment agreements. HB&E agreed, and the parties entered letter employment
agreements. 
         The employment agreement between HB&E and Guerra and the employment
agreement between HB&E and Beam are almost identical. Both provide that:
As per our agreement in reference to the above-mentioned case, it is
agreed that you have retained me as local counsel. You hereby assign,
convey and quitclaim a 1/6 interest in any attorney’s fees recovered by
contingent fee, court award, statute, settlement or otherwise to me from
the above litigation as my fee as being retained as local counsel. 
 
This interest is conveyed regardless of whether the matter proceeds to
trial or settles and/or whether or not services are rendered since I am
hereby placed by you on standby to aid in any and all needs involved in
all phases of case development, prelitigation, litigation and postlitigation
and/or settlement. 

Beam’s agreement further provided that: “This agreement can only be revoked and/or
altered in writing signed by both of us,” and Guerra’s agreement also provided that:
“This agreement shall supersede any and all agreements, either written or oral that we
have entered into and can only be revoked and/or altered in writing signed by both of
us.” 
         Guerra played a very active role in assisting HB&E: he worked with clients, he
appeared at hearings, he presented clients for depositions. Beam did little to no work
on the matter, although the staff of Burkett & Beam did provide litigation support, and
Beam supervised those staff members who worked on the case. 
         As the litigation progressed, Burkett & Beam fired Guerra, admittedly in part
because of the large amount of time that Guerra spent working on the case. HB&E
gave Guerra advances on his fee, and Guerra continued working on the case, as did
some of the staff at Burkett & Beam. As mediation approached, HB&E determined
that it would be advantageous to the case to retain Williams Bailey L.L.P., for trial. In
conjunction with its effort to retain the law firm of Williams Bailey, a dispute arose
between HB&E, Guerra, and Beam regarding the reduction of Beam and Guerra’s fees
under the agreements. The parties failed to reach an agreement regarding the amount
of fees owed to Guerra and Beam, and ultimately, Guerra and Beam intervened in the
underlying lawsuit to collect their attorney’s fees. 
         After a jury trial and settlements by certain defendants, the trial court severed
their interventions and held a non-jury trial. The trial court entered judgment in favor
of Guerra and against Beam. These appeals ensued. 
II.
Standard of Review
         Findings of fact in a case tried to the court have the same force and effect as
a jury verdict. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991);
Guerra v. Garza, 865 S.W.2d 573, 575 (Tex. App.–Corpus Christi 1993, writ dism’d
w.o.j.). However, the trial court’s findings of fact are not conclusive when there is a
complete reporter’s record, as is the case here. Tucker v. Tucker, 908 S.W.2d 530,
532 (Tex. 1995). In that case, we are not bound by the trial court’s findings but can
review the findings for legal and factual sufficiency of the evidence by the same
standards used to review the evidence supporting a jury verdict. Id. 
         When reviewing a legal insufficiency point of error, we consider only the
evidence and inferences, when viewed in their most favorable light, that tend to
support the finding, and disregard any evidence and inferences to the contrary. 
Sherman v. First Nat’l Bank, 760 S.W.2d 240, 242 (Tex. 1988). If there is more than
a scintilla of evidence that supports the finding, we must overrule the issue and uphold
the finding. Id.
         When reviewing a factual sufficiency point, we examine all of the evidence, both
the evidence that supports the finding and the evidence that controverts the finding. 
Lofton v. Tex. Brine Corp., 720 S.W.2d 804, 805 (Tex. 1986). We can set aside the
finding only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In a
bench trial, the trial court, as fact-finder, is the sole judge of the credibility of the
witnesses. Southwestern Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 493 (Tex.
App.–Houston [1st Dist.] 1992, writ denied). The judge may take into consideration
all the facts and surrounding circumstances in connection with the testimony of each
witness, and accept or reject all or any part of that testimony. Id.
         The legal conclusions of the trial court are not binding on an appellate court;
instead, we are free to draw our own legal conclusions. See Pegasus Energy Group,
Inc. v. Cheyenne Petroleum Co., 3 S.W.3d 112, 121 (Tex. App.–Corpus Christi 1999,
pet. denied); Austin Hardwoods, Inc. v. Vanden Berghe, 917 S.W.2d 320, 322 (Tex.
App.–El Paso 1995, writ denied). 
III.
Hoeffner, Bilek & Eidman’s Appeal
         HB&E appeals the award of fees entered against it in four issues, contending
that the trial court erred in: (1) awarding Guerra contingent attorney’s fees which
accrued after he breached his fiduciary duties to his clients and also materially
breached his service agreement; (2) holding that Guerra’s breach of fiduciary duties to
his clients, which action also constituted a breach of his agreement with HB&E, was
excused by HB&E’s alleged unjustified anticipatory repudiation of that same
agreement; (3) finding that there was sufficient evidence that HB&E unjustifiably
anticipatorily repudiated its service agreement with Guerra; and (4) ordering declaratory
relief in favor of Guerra, as (a) he was legally barred from suing on the service
agreement and could only sue for monetary damages; and (b) he offered no evidence
of monetary damages.
         HB&E’s second and third issues attack the trial court’s findings that Guerra’s
breach of fiduciary duty and breach of contract were excused by HB&E’s unjustified
anticipatory repudiation of the agreement. HB&E specifically contends that there is
insufficient proof of a positive, unequivocal, and unconditional repudiation. HB&E
further argues that the evidence shows merely that it was attempting to induce Guerra
to accept a new and separate agreement “so that the best interests of their mutual
clients could be served.” See Cooper v. Wildman, 528 S.W.2d 80, 86 (Tex. Civ.
App.–Corpus Christi 1975, no writ) (offering a new and separate agreement does not
constitute repudiation). 
         Repudiation or anticipatory breach is a positive and unconditional refusal to
perform the contract in the future, expressed either before performance is due or after
partial performance. Van Polen v. Wisch, 23 S.W.3d 510, 516 (Tex. App.–Houston
[1st Dist.] 2000, pet. denied). It is conduct that shows a fixed intention to abandon,
renounce, and refuse to perform the contract. In re Braddock, 64 S.W.3d 581, 585
(Tex. App.–Texarkana 2001, no pet.); Hauglum v. Durst, 769 S.W.2d 646, 651 (Tex.
App.–Corpus Christi 1989, no writ). Repudiation may be proven by words or actions. 
Braddock, 64 S.W.3d at 585.
         In the instant case, Bilek testified that he attempted to renegotiate the fee
arrangement with Guerra, but admitted that he told Guerra that the firm would “stand
on our rights.” However, Guerra testified that, following an unsuccessful mediation
in the case, Bilek told him that if they could not reach an agreement to reduce Guerra’s
fees, he was going to give the case back to Guerra and let him “deal with it.” Bilek
told him that if he refused to agree to an adjustment of the fees, “he had me over a
barrel.” Bilek outlined his entire case against Guerra if Guerra were to contest the
reduction of his fees, and told Guerra he would lose. Bilek told Guerra “that he felt
that he had me over a barrel and I had to take it, take it or basically he would – he
would – well, ‘F’ me is what he said, so . . . .” 
         Bilek made it clear he was not going to pay Guerra under the contract in March
of 1999 and stopped advancing fees to Guerra. Guerra continued to work with Bilek
to reach an agreement, until Bilek finally told him he would no longer “deal” with him. 
Guerra then retained an attorney who contacted HB&E regarding the dispute without
response. Guerra’s attorney contacted HB&E a second time, advising HB&E that
Guerra would be forced to “pursue his legal remedies” if the dispute were not resolved. 
HB&E again failed to respond, and Guerra then intervened in the underlying lawsuit. 
         Based on the foregoing evidence, the trial court could have concluded that Bilek
was not merely offering Guerra a new and separate agreement, but was rather refusing
to perform the contract as drafted. This testimony indicates a fixed intention to
abandon, renounce, and refuse to perform the contract. Braddock, 64 S.W.3d at 585;
Hauglum, 769 S.W.2d at 651. 
         HB&E further argues that even if HB&E anticipatorily repudiated the service
agreement, which it disputes, its acts were justified. In order to constitute a
repudiation or anticipatory breach, the party to the contract must have absolutely
repudiated the contract without just excuse. Van Polen, 23 S.W.3d at 516; Poe v.
Hutchins, 737 S.W.2d 574, 578 (Tex. App.–Dallas 1987, writ ref’d n.r.e.). HB&E
points to evidence in the record that Guerra supported the efforts to engage the
Williams Bailey law firm, that it was in the best interests of the plaintiffs, and that the
case would be in a better position if Williams Bailey were involved. This evidence does
not excuse or justify HB&E’s refusal to honor its agreement with Guerra.
         HB&E also argues that Guerra’s intervention constituted a superseding cause
that excused the firm from complying with the agreement. Under Texas law, an
anticipatory repudiation gives the nonrepudiating party the option to treat the
repudiation as a breach, or ignore it and await the agreed upon time of performance. 
Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 211 (Tex. 1999); Bumb
v. Intercomp Tech., L.L.C., 64 S.W.3d 123, 125 (Tex. App.–Houston [14th Dist.]
2001, no pet.). The nonrepudiating party must do one or the other; it cannot do both. 
Bumb, 64 S.W.3d at 125 (citing Griffith v. Porter, 817 S.W.2d 131, 135 (Tex.
App.–Tyler 1991, no writ)). By choosing to sue after the time for performance of the
contract, the nonrepudiating party elects to ignore the anticipatory repudiation. Bumb,
64 S.W.3d at 125. Under this option, the nonrepudiating party must continue to
comply with the contract and enable the other party “not only to complete the
contract, if so advised, notwithstanding his previous repudiation of it, but also to take
advantage of any supervening circumstances which would justify him in declining to
complete it.” Id. (quoting Pollack v. Pollack, 39 S.W.2d 853, 857 (Tex. Comm’n App.
1931, holding approved)). HB&E’s reliance on Bumb is misplaced. 
         In Bumb, the court found that where an employer anticipatorily breached its
employment agreement with an employee, the employee’s subsequent tortious acts
constituted a superceding cause excusing the employer from payment under the
agreement. Bumb, 64 S.W.3d at 125. In the instant case, the record indicates that
Guerra was ready and willing to perform under the contract and did not file the
intervention until it became readily apparent that HB&E was not going to honor the
agreement. Guerra’s intervention did not constitute a superceding act which would
excuse HB&E from payment. We overrule HB&E’s second and third issues.
         In its first issue, HB&E argues that the trial court erred when it awarded Guerra
contingent attorney’s fees, which accrued after Guerra breached his fiduciary duty to
his clients and also materially breached his service agreement with HB&E. In its
findings of fact, the trial court found that HB&E anticipatorily breached the agreement
without good cause by indicating that it would not honor the agreement and that
Guerra generally complied with his fiduciary duties to the plaintiffs in the underlying
action, although his plea in intervention “did constitute a breach of duty to the
Plaintiffs.”
         According to HB&E, Guerra breached his fiduciary duties and breached his
employment contract by intervening in the underlying lawsuit for his attorney’s fees. 
HB&E characterizes this as Guerra suing his own clients. HB&E does not argue that
Guerra committed any other actions constituting either a breach of fiduciary duty or
a breach of contract.
          HB&E does not cite any authority for the proposition that Guerra’s intervention
constituted a breach of his fiduciary duty to the plaintiffs. Contrary to HB&E’s
argument, Texas law is replete with cases in which attorneys have intervened in
lawsuits to protect their fees. Schaeffer v. O’Brien, 39 S.W.3d 719, 720 (Tex.
App.–Eastland 2001, pet. denied) (discharged attorney filed plea in intervention to
protect fee); Sommers v. Concepcion, 20 S.W.3d 27, 31 (Tex. App.–Houston [14th
Dist.] 2000, pet. denied) (various attorneys intervened in underlying proceeding to
protect fees); Cantu v. Butron, 921 S.W.2d 344, 347 (Tex. App.–Corpus Christi
1996, writ denied) (discharged attorney filed plea in intervention to protect fee);
Schwartz v. Taheny, 846 S.W.2d 621, 622-23 (Tex. App.–Houston [14th Dist.]
1993, writ denied) (trial court severed intervention seeking contingent attorney’s fees);
Rocha v. Ahmad, 676 S.W.2d 49, 152 (Tex. App.–San Antonio 1984, writ dism’d
w.o.j.) (discharged attorney sued former clients for attorney’s fees by intervening in
underlying suit); Birge v. Conwell, 105 S.W.2d 407, 409 (Tex. Civ. App.–Amarillo
1937, writ ref’d) (“perfectly legitimate” for attorneys to intervene). Moreover, while
we could envision a case wherein an intervention seeking attorney’s fees could
constitute a breach of fiduciary duty, the evidence in this case fails to support such
a conclusion. 
         As an initial matter, we find it salient that the plaintiffs in the underlying
proceeding have neither urged that Guerra committed a breach of fiduciary duty nor
have they sought fee disgorgement against Guerra. Rather, HB&E is avoiding payment
to Guerra and Beam for the monies due to them under the agreements by asserting
that Guerra and Beam breached their fiduciary duties to their clients. 
         Further, the pleadings do not support HB&E’s argument. In the original plea in
intervention, Guerra stated that:
Intervenor has a justiciable interest in this litigation in that he has a legal
and equitable interest in any settlement proceeds received by Plaintiffs
and/or Plaintiffs’ attorneys, by virtue of an assignment of one-sixth
(1/6th) of the total attorney’s fees which may in the future be recovered
in this cause of action. See Exhibit A.
 
WHEREFORE, PREMISES CONSIDERED, Intervenor requests that the
parties take notice of the filing of this Plea in Intervention, and that on
final hearing and judgment, Intervenor’s lien as to attorney’s fees be
affirmed and he be awarded one-sixth (1/6th) of the total attorney’s fees
recovered [on] behalf of Plaintiffs by current counsel of record and/or
their assigns or successors . . . .

The language in Guerra’s live pleading at the time of trial is similar. Under the
pleadings, Guerra asserts no cause of action against plaintiffs, but merely asserts his
interest in the attorney’s fees. 
         Moreover, the testimonial evidence regarding whether the intervention caused
harm to the plaintiffs was confusing and contradictory. An expert witness for Guerra
testified that the intervention was “absolutely” not a breach of fiduciary duty and that
an intervention, rather than a separate lawsuit, was the only way to adequately protect
Guerra’s interest in his fees. 
         Bilek initially testified by deposition that the intervention did not cause the
plaintiffs any harm, but later testified that he believed that the intervention was
harmful because it looked like the plaintiffs’ attorneys were in disarray, and following
the intervention, the plaintiffs did not receive any other offers of settlement until after
trial. Based on the record before us, we conclude that Guerra’s intervention did not
constitute a breach of fiduciary duty, and we disapprove of the court’s findings of fact
and conclusions of law to the extent that they say otherwise. Accordingly, we
overrule HB&E’s first issue.
          In its fourth issue, HB&E argues that the trial court erred in ordering declaratory
relief in favor of Guerra because Guerra could only sue for monetary damages, and 
Guerra offered no evidence of monetary damages. HB&E’s argument is contradicted
by the plain language of the Declaratory Judgment Act. See Tex. Civ. Prac. & Rem.
Code Ann. § 37.004(b) (Vernon 1997) (allowing construction of contract either before
or after breach). Further, at trial, the parties expressly stipulated that the total amount
of attorney’s fees at issue was $3,796,071.18. We overrule HB&E’s fourth issue.
         Having overruled each of HB&E’s issues, we affirm the trial court’s judgment
as against HB&E.
          V. 
Beam’s Appeal
         Beam, local counsel who received no fees, raises ten issues on appeal. In issues
one, two, three, four, six, seven, nine, and ten, Beam contends that there is legally
and factually insufficient evidence to support findings of fact (1) five and six, that
Beam provided no legal services in connection with the Beam/HB&E Agreement and
was not available to provide legal services to HB&E, and, therefore, breached the
agreement; (2) seven and ten, that Beam shut down his practice of law and terminated
Guerra and, therefore, breached said agreement; (3) eight, that Beam abandoned his
interest under the agreement; (4) twelve, that there was a failure of consideration with
respect to the agreement; (5) eleven and thirteen, that HB&E reasonably relied upon
acts and omissions on the part of Beam which estopped Beam from asserting any of
his rights under the agreement, and HB&E’s failure to honor the agreement is,
therefore, excused and justified; (6) four, that HB&E had no agreement to pay Beam
any attorney’s fees in the Candelaria litigation; and (7) fourteen, that it is reasonable
and just to divide the costs of court as 85%, 15%, and 0% among HB&E, Beam, and
Guerra respectively in the Aguirre litigation, and that Beam is to bear all costs of court
in the Candelaria litigation. In his fifth issue, Beam asserts that the trial court erred as
a matter of law in finding of fact nine that Beam breached his fiduciary duties to the
plaintiffs in the Aguirre litigation by filing the plea in intervention. In his eighth issue,
Beam argues that the trial court erred in not finding that HB&E repudiated the
agreement and by not awarding Beam his contractual attorney’s fees of one-sixth in
both the Aguirre and Candelaria cases. As it pertains to Beam, we affirm the trial
court’s judgment.
         In issues one, two, and three, Beam asserts, in part, that there is legally and
factually insufficient evidence to support the trial court’s findings that Beam was not
available to provide legal services to HB&E, that Beam shut down his practice of law,
and that Beam abandoned his interest under the agreement. Under Texas law, an
attorney who abandons a case without just cause before completing the task for which
his client hired him breaches his contract of employment and forfeits all right to
compensation. Staples v. McKnight, 763 S.W.2d 914, 916 (Tex. App.–Dallas 1988,
writ denied); see Royden v. Ardoin, 331 S.W.2d 206, 209 (Tex. 1960).
         Bilek testified that he had a conversation with Beam in December of 1997
wherein Beam told him that he was not willing to work on the case, that “nothing was
provided,” and that Guerra had been fired. Beam told him that he was quitting the
practice of law. According to Bilek, “Mr. Beam clearly just abandoned at this point. 
I mean, he didn’t want to do it.” 
         Guerra testified that Steve Burkett fired him on December 31, 1997. Burkett
told Guerra that he and Mr. Beam were “winding things down,” that they were going
to close the office, and that both Beam and Burkett were going to retire. Guerra
conveyed this information to Bilek and Hoeffner. Guerra testified that he never saw
Beam perform any work on the case other than supervising his employees and did not
see Beam involved in the case at all during 1998. Nevertheless, Guerra testified that
he did not think that Beam breached the agreement.
         Hoeffner testified that he saw Beam in January and told Beam that he could not
“believe you made all these promises and assurances to me, and when it came down
to nut cutting you ran for cover.” According to Hoeffner, Beam replied that “I’m
getting out of the practice of law.” 
         Beam admitted that, although his staff worked on the case, he performed very
little work on the matter. Beam suffered severe health problems in 1997 and divorced
in 1998. As a result, Beam decided to “cut back” on the practice of law. Beam
admitted that he was no longer practicing law by February or March of 1999 and that
his firm dissolved in 1999. However, Beam testified that he was not planning to retire
in 1997 and denied ever telling Bilek that was his plan. Beam denied abandoning the
agreement. According to Beam, he and his staff were “on standby” to work on the
case, and his staff continued working on the case during 1998. Interestingly, Beam
also testified that, according to his interpretation of the agreement, the law firm of
Burkett and Beam was not on standby, and he was the only attorney at the firm that
was subject to the agreement. 
         Given the foregoing testimony, more than a scintilla of evidence supports the
trial court’s findings that Beam was not available to provide legal services and that
Beam abandoned the contract. Sherman, 760 S.W.2d at 242. Moreover, the findings
are not so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Cain, 709 S.W.2d at 176. Although there was conflicting testimony, the
trial court was the sole judge of the credibility of the witnesses. Southwestern Bell
Media, Inc., 825 S.W.2d at 493. The judge may take into consideration all the facts
and surrounding circumstances in connection with the testimony of each witness and
accept or reject all or any part of that testimony. Id. We conclude that the trial court
did not err in concluding that Beam abandoned the contract without just cause prior
to the end of the litigation, and therefore forfeited all right to compensation. Staples,
763 S.W.2d at 916; see Royden, 331 S.W.2d at 209. Accordingly, we overrule
issues one, two, and three. Given our disposition of these issues, we need not
address issues four, five, six, and eight. See Tex. R. App. P. 47.1.
         In his seventh issue, Beam alleges that there is legally and factually insufficient
evidence to support the trial court’s finding that HB&E had no agreement to pay Beam
attorney’s fees in the Candelaria litigation. Guerra and Beam intervened not only in the
underlying lawsuit, Aguirre v. Browning-Ferris Indus., Inc., Cause No. S-96-5539-CV-B-7 in the 156th District Court of San Patricio County, but also intervened in a
separate but related cause, Candelaria v. Browning-Ferris Indus., Inc., Cause No. S-97-5853-CV-A, pending in the 36th Judicial District Court of San Patricio County. The
interventions were tried together, and the trial court issued one set of findings of facts
and conclusions of law applicable to both cases. However, the trial court entered
separate judgments in each cause. Beam failed to appeal the judgment entered in
Candelaria, and may not seek to collaterally attack that judgment in this cause. See
Tex. R. App. P. 25. We overrule this issue. 
         In his ninth issue, Beam asserts that the trial court’s finding that it was equitable
and just to award him no attorney’s fees was supported by legally and factually
insufficient evidence. According to Beam, he was entitled to attorney’s fees under
either the Declaratory Judgment Act or the attorney’s fees provisions of chapter thirty-eight of the civil practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann.
§ 37.009 (Vernon 1997) (providing for attorney’s fees in declaratory judgment
actions); Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997) (providing for
attorney’s fees in specified actions). 
         Under the Declaratory Judgment Act, an award of attorney’s fees rests within
the trial court’s discretion, subject to the requirements that any fees awarded be
reasonable, necessary, equitable, and just. Bocquet v. Herring, 972 S.W.2d 19, 21
(Tex. 1998). Whether the attorney’s fees are reasonable and necessary are fact
questions; whether the fees are equitable and just are matters of law, which come
within the trial court’s discretion. Id. In reviewing a trial court’s decision not to award
fees, we examine whether the complaining party established that the fees sought were
equitable and just. Heritage Res., Inc. v. Hill, 104 S.W.3d 612, 617-18 (Tex. App.–El
Paso 2003, no pet.). On this record, we cannot conclude that the trial court abused
its discretion in failing to award Beam his attorney’s fees under the Declaratory
Judgment Act. 
         Moreover, we further conclude that Beam was not entitled to attorney’s fees
under chapter thirty-eight of the civil practice and remedies code. To recover
attorney’s fees under section 38.001 of the civil practice and remedies code, a party
must both prevail on a claim for which attorney’s fees are recoverable and recover
damages. Green Int’l v. Solis, 951 S.W.2d 384, 390 (Tex. 1997); Ed Rachal Found.
v. Unger, 117 S.W.3d 348, 357 (Tex. App.–Corpus Christi 2003, pet. filed); see Tex.
Civ. Prac. & Rem. Code Ann. § 38.001. As previously determined, Beam neither
prevailed on a claim for which attorney’s fees are recoverable nor recovered damages,
and thus Beam’s claim was not “valid” within the meaning of the code. See World
Help v. Leisure Lifestyles, Inc., 977 S.W.2d 662, 683 (Tex. App.–Fort Worth 1998,
pet. denied). We overrule Beam’s ninth issue. 
         In his tenth issue, Beam alleges that the evidence is legally and factually
insufficient to support the trial court’s finding that it “is reasonable and just to divide
the costs of court in the following proportions among HB&E, Beam and Guerra in the
intervention in the Aguirre litigation: 85%, 15% and 0% respectively. Beam is to bear
all costs of court in the Candelaria litigation.” Beam’s only argument in favor of this
issue is that:
If Beam is entitled to his contractual portion of the HB&E’s attorney’s
fees in the Aguirre or Candelaria Litigation as requested hereinabove, as
the successful party, he is also entitled to recover from HB&E all of his
costs incurred in the interventions . . . .

We have determined herein that Beam is not entitled to attorney’s fees in Aguirre and
that he may not collaterally attack the trial court’s judgment in Candelaria. Beam is
not a prevailing party herein. See Tex. R. Civ. P. 131. We overrule this issue.
         The trial court’s judgment insofar as it pertains to Beam is affirmed in its
entirety. 
VI.
Guerra’s Appeal
         Guerra, who received some, but not all, of the attorney’s fees he sought, raises
five issues: (1) did Guerra breach his fiduciary duties to the plaintiffs when he filed his
plea in intervention; (2) did the trial court err in concluding that the legal prejudgment
and postjudgment interest rate was the rate earned by any funds in the registry of the
court; (3) did the trial court err in refusing to render judgment against lead counsel
individually; (4) did the trial court abuse its discretion in failing to award attorney’s
fees and is such finding against the great weight and preponderance of the evidence;
and (5) is the trial court’s finding that Guerra was not entitled to attorney’s fees for
Candelaria supported by the evidence. With regard to Guerra’s appeal, we modify the
judgment in part, and as modified, affirm. 
         We have already addressed Guerra’s first issue in conjunction with the appeal
brought by HB&E, and need not further address it herein. Guerra’s first issue is
sustained. 
         In Guerra’s second issue, he argues that the trial court erred in concluding that
the rate of prejudgment and postjudgment interest was the “rate earned by any funds
placed in the registry of the court.” The trial court awarded prejudgment interest at
the rate earned by funds placed in the registry of the court from the date the “fees
were or are delivered . . . into the registry of the Court . . . up to the date of
judgment,” and postjudgment interest at the same rate “from the date of rendition until
paid.” 
         According to Guerra, prejudgment and postjudgment interest rates are
established by law and do not depend on the discretion of the trial court. See Tex. Fin.
Code Ann. § 30.002 (Vernon Supp. 2004) (breach of contract cases earn prejudgment
interest at the default interest rate of six percent per year); Act of April 23, 1999,
76th Leg., R.S., ch. 62, §7.18(a), 1999 Tex. Gen. Laws 127, 232; see now Tex. Fin.
Code Ann. § 304.003(c) (Vernon Supp. 2004) (postjudgment interest rate modified
from minimum of ten percent to prime rate, but in no case less than five percent or
more than fifteen percent). Guerra thus requests that this Court reform the judgment
to provide for prejudgment interest at six percent and postjudgment interest at ten
percent. 
         With regard to prejudgment interest, HB&E argues that Guerra waived the issue
because Guerra essentially agreed to the rate of prejudgment interest when he
requested that the funds be placed in the registry of the court. An appellate court
reviews the award of prejudgment interest under an abuse of discretion standard of
review. Volkswagen of Am., Inc. v. Ramirez, 79 S.W.3d 113, 126 (Tex. App.–Corpus
Christi 2002, pet. granted); J.C. Penney Life Ins. Co. v. Heinrich, 32 S.W.3d 280, 289
(Tex. App.–San Antonio 2000, pet. denied). A trial court abuses its discretion if it
acts in an arbitrary or unreasonable manner without reference to any guiding rules or
principles. Walker v. Gutierrez, 111 S.W.3d 56, 63 (Tex. 2003) (citing Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)). 
         There are two sources for an award of prejudgment interest: (1) general
principles of equity, and (2) an enabling statute. Johnson & Higgins, Inc. v. Kenneco
Energy, 962 S.W.2d 507, 530 (Tex. 1998). 
         Based on the facts of this case, we cannot conclude that the trial court abused
its discretion in awarding prejudgment interest at the rate earned by funds in the
registry of the court. As a general rule, prejudgment interest should not be assessed
on funds that were deposited into the registry of the court. See Pegasus Energy
Group, Inc. v. Cheyenne Petroleum Co., 3 S.W.3d 112, 125 (Tex. App.–Corpus Christi
1999, pet. denied); Edwin M. Jones Oil Co. v. Pend Oreille Oil & Gas Co., 794 S.W.2d
442, 450 (Tex. App.–Corpus Christi 1990, writ denied). Accordingly, the trial court
acted within its discretion in awarding only the interest that was earned by the funds
in the registry of the court. See Pegasus, 3 S.W.3d at 125.
         With regard to the trial court’s award of postjudgment interest, however, we
agree with Guerra that the trial court should have awarded postjudgment interest at
ten percent. The version of the Texas Finance Code in effect at the time the judgment
was signed and subject to appeal specifically provided that judgments earn
postjudgment interest at ten percent. See Act of April 23, 1999, 76th Leg., R.S., ch.
62, §7.18(a), 1999 Tex. Gen. Laws 127, 232; see now Tex. Fin. Code Ann. §
304.003(c) (Vernon Supp. 2004) (postjudgment interest rate modified to prime rate,
but in no case less than five percent or more than fifteen percent).


 We have found
no authority allowing the imposition of postjudgment interest at the rate earned by
funds in the registry of the court, and accordingly, conclude that the trial court abused
its discretion in awarding postjudgment interest at that rate. See Walker, 111 S.W.3d
at 63. We reverse the trial court’s judgment insofar as it awards postjudgment
interest at the rate earned by funds held in the registry of the court and modify the
judgment to include an award of postjudgment interest at the rate of ten percent. 
Guerra’s second issue is sustained in part and overruled in part. 
         In his third issue, Guerra contends that the trial court erred in refusing to render
judgment against Hoeffner and Bilek individually. Guerra argues that Hoeffner and
Bilek were specifically named in the intervention and actively participated in trial; thus,
the judgment should be reformed to reflect that they are individually liable. In
contrast, HB&E argues that Guerra never served Hoeffner nor Bilek individually, nor did
they accept service on behalf of the law firm.
         A petition against a partnership should allege that a partnership exists, state the
name of the partnership, list all the partners, and state that the partners are sued as
members of the partnership. Ben Fitzgerald Realty Co. v. Muller, 846 S.W.2d 110,
115 (Tex. App.–Tyler 1993, writ denied). Citation served on one member of a
partnership authorizes a judgment against the partnership and the partner actually
served. Tex. Civ. Prac. & Rem. Code Ann. § 17.022 (Vernon 1997); Fincher v. B&D
Air Conditioning & Heating Co., 816 S.W.2d 509, 512 (Tex. App.–Houston [1st Dist.]
1991, writ denied); see also Tex. Rev. Civ. Stat. Ann. art. 6132b-3.04 (Vernon Supp.
2004) (partners in a general partnership are jointly and severally liable for all
partnership debts). If a suit is against several partners and citation has been served
on one, but not all of the partners, the court may render judgment against the
partnership and against the partners who were actually served, but may not award a
personal judgment or execution against any partner who was not served. Tex. Civ.
Prac. & Rem. Code Ann. § 31.003 (Vernon 1997). 
         In the instant case, neither Bilek nor Hoeffner were served; therefore, judgment
may not be entered against them in their individual capacities. See id. We overrule
Guerra’s third issue.
         In his fourth issue, Guerra argues that the trial court abused its discretion in
failing to award attorney’s fees, and that the trial court’s finding of zero attorney’s
fees is against the great weight and preponderance of the evidence. According to
Guerra, an award of attorney’s fees was mandatory under section 38.001 of the civil
practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon
1997). 
         In its findings of fact, the trial court found that it had authority under the
Declaratory Judgment Act to award attorney’s fees, but found that the “equitable and
just award of reasonable and necessary attorney’s fees is to award Guerra no such
attorney’s fees.” The trial court concluded as a matter of law that Guerra was not
entitled to fees under either chapter 37 or chapter 38 of the Texas Civil Practice and
Remedies Code. Compare Tex. Civ. Prac. & Rem. Code Ann. § 37.001 - § 37.011
(Vernon 1997 & Supp. 2004) (Declaratory Judgments Act) with Tex. Civ. Prac. &
Rem. Code Ann. § 38.001 (Vernon 1997) (recovery of attorney’s fees). 
         The availability of attorney’s fees under a particular statute is a question of law
for the court. Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999). We
apply a de novo review to questions of law. Tex. Dep’t of Transp. v. Needham, 82
S.W.3d 314, 318 (Tex. 2002). 
         Section 38.001 of the civil practice and remedies code provides that “a person
may recover reasonable attorney’s fees . . . in addition to the amount of a valid claim
and costs, if the claim is for . . . an oral or written contract.” Tex. Civ. Prac. & Rem.
Code Ann. § 38.001(8) (Vernon 1997). For a claimant to recover attorney’s fees
under this section: (1) he must be represented by an attorney; (2) he must present the
claim to the opposing party or to an authorized agent of the opposing party; and (3)
the opposing party must not tender payment for the amount owed before the
expiration of thirty days after presentment. See id. § 38.002 (Vernon 1997). When
a party proves these three elements and prevails on a valid claim founded on a written
or oral contract, an award of reasonable attorney’s fees is mandatory, not
discretionary. See Welch v. Hrabar, 110 S.W.3d 601, 610 (Tex. App.–Houston [14th
Dist.] 2003, pet. denied); Jackson Law Office, P.C. v. Chappell, 37 S.W.3d 15, 23
(Tex. App.–Tyler 2000, pet. denied); see also Sadoskas v. Sadoskas, No. 13-02-216-CV, 2003 Tex. App. LEXIS 6211, *8 (Tex. App.–Corpus Christi July 17, 2003, no
pet.) (memorandum opinion). A trial court has the discretion to set the amount of
attorney’s fees, but it does not have the discretion to completely deny attorney’s fees
if they are proper under section 38.001. See Jackson Law Office, P.C., 37 S.W.3d
at 23; Essex Crane Rental Corp. v. Striland Constr. Co., 753 S.W.2d 751, 758 (Tex.
App.–Dallas 1988, writ denied).
         We conclude that the trial court erred in failing to award Guerra his attorney’s
fees under chapter 38 of the civil practice and remedies code. Guerra satisfied all
requisites for the award. The trial court expressly found that HB&E entered into a
written agreement for professional services and that HB&E breached the agreement. 
We sustain Guerra’s issue regarding attorney’s fees. 
         Generally, what constitutes reasonable attorney’s fees is a question of fact. See
Int’l Sec. Life Ins. Co. v. Spray, 468 S.W.2d 347, 349 (Tex. 1971); Grace v. Duke,
54 S.W.3d 338, 344 (Tex. App.–Austin 2001, pet. denied). However, when an
attorney’s testimony regarding fees is uncontroverted, clear, direct, and positive, and
not contradicted by any other witness or attendant circumstances, and there is nothing
to indicate otherwise, we may render judgment for attorney’s fees. See Welch, 110
S.W.3d at 610; Grace, 54 S.W.3d at 344.
         In this case, appellant’s trial counsel testified, without any contradicting
testimony or other evidence, that his reasonable and necessary attorney’s fees were
$58,555, and that reasonable and necessary fees for an appeal to the court of appeals
was $25,000, $10,000 to bring or defend a petition for review in the supreme court,
and $5,000 if a petition for review were to be granted. Thus, we reverse the trial
court’s judgment insofar as it denied Guerra attorney’s fees, and modify the judgment
to include an award of the aforementioned fees to Guerra. See Welch, 110 S.W.3d
at 610; Grace, 54 S.W.3d at 344.
         In his fifth issue, Guerra attacks the trial court’s finding that he was not entitled
to fees in the Candelaria litigation. Guerra failed to file a notice of appeal regarding the
judgment entered against him in Candelaria, but has, subsequent to filing his brief,
moved to amend his notice of appeal in this case to encompass an appeal of the
Candelaria litigation. See Tex. R. App. P. 25.1(f) (after the appellant’s brief is filed, as
in this case, the notice may be amended only on leave of the appellate court and on
such terms as the court may prescribe). We conclude, as we did with Beam, that
Guerra may not collaterally attack that judgment in this cause. See Tex. R. App. P. 25. 
We overrule Guerra’s fifth issue.
         We modify the trial court’s judgment insofar as it awarded postjudgment interest
to Guerra at the rate earned by funds deposited in the registry of the court and failed
to award Guerra attorney’s fees, and modify the judgment to award Guerra ten percent
postjudgment interest and attorney’s fees. As modified, the judgment of the trial court
is affirmed. 
                                                                                                                   
                                                                        Rogelio Valdez,
                                                                        Chief Justice

J. Bonner Dorsey not participating.

Opinion delivered and filed
this 27th day of May, 2004.